O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HSIAO & MONTANO, INC. dba ODYSSEY INNOVATIVE DESIGNS,<br><br>                    Plaintiff,<br>          v.<br><br>BANGDE ZHANG, GUANGZHOU HDE AUTIO EQUIPMENT CO LTD, GUANGZHOU MONSCK CASE FACTORY CO LTD, GUANGZHOU JISKA AUDIO EQUIPMENT CO LTD, and DOES 1–10,<br><br>                    Defendants. | Case No. 2:13-cv-00493-ODW(VBKx)<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT [27]** |

## I.   INTRODUCTION

Hsiao & Montano, Inc., doing business as Odyssey Innovative designs ("Odyssey"), moves for default judgment against Defendants Bangde Zhang, Guangzhou HDE Audio Equipment Co. Ltd. ("GHAEC"), Guangzhou Monsck Case Factory Co. Ltd. ("Monsck"), and Guangzhou Jiska Audio Equipment Co. Ltd. ("Jiska").  (ECF No. 27.)  For the following reasons, the Court **GRANTS** Odyssey's Motion.[1]

/ / /

---

[1] Having carefully considered the papers filed in support of the instant Motion, the Court deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.   FACTUAL BACKGROUND

This action arises out of Defendants' alleged infringement upon Odyssey's registered "FLIGHT READY" and "FLITE READY" trademarks.   Odyssey is a nationally known provider of disc-jockey equipment and accessories, including disc-jockey cases and other music-related products.  (Compl. ¶ 14.)   Odyssey owns two registered trademarks that it contends have gained widespread recognition by being associated with Odyssey's high-quality products.  (*Id.* ¶¶ 15–16, 45.)   Odyssey sells its products through its registered domain names "flightreadycases.com," "flitereadycases.com," and "odysseygear.com."  (*Id.* ¶¶ 30–31.)

Defendant Zhang has a history of manufacturing music-related products for Odyssey.  (*Id.* ¶¶ 22–24.)  In 2002, when Odyssey commenced usage of its FLIGHT READY marks, Zhang was a foreman for the Chinese manufacturer of Odyssey's products.  (*Id.* ¶¶ 18, 22.)   Zhang subsequently started his own manufacturing company, Jiska, and entered into a separate contract with Odyssey in or about 2006. (*Id.* ¶ 24; ECF No. 30-6, Ex. 25.)  The 2006 contract provided that Zhang's company would manufacture disc-jockey cases and other music-related equipment exclusively for Odyssey.  (*Id.*; ECF No. 27-17, Ex. 17.)

In 2006, unbeknownst to Odyssey, Zhang registered the domain name "flightready-cases.com."  (Compl. ¶ 25.)  In 2008, again unbeknownst to Odyssey, Zhang registered the domain name "flightreadycases.com.cn."  (*Id.* ¶ 28.)  Upon learning of Zhang's websites, Odyssey demanded Zhang cease using these domain names.  (Mot. 5.)   Instead, Zhang proceeded to register a third domain name, "flightready.com.cn."  (*Id.*)

Odyssey alleges that Zhang registered these domain names in his capacity as an officer for Defendants Monsck, Jiska, and GHAEC (Compl. ¶¶ 6, 25–27), all of whom have conducted business with Odyssey (ECF No. 30, Exs. 21–25).   According to Odyssey, and as supported by the evidence, Defendants' websites are nearly identical to Odyssey's.   (*Id.* ¶¶ 30–31.)   Moreover, Defendants allegedly distributed

merchandise bearing Odyssey's trademarks through these websites, despite having agreed to not manufacture products bearing Odyssey's trademark for anyone other than Odyssey.  (*Id.* ¶ 46; ECF No. 27-17.)

On January 23, 2013, Odyssey filed a Complaint in this Court alleging claims against Defendant for (1) unfair competition in violation of 15 U.S.C. § 1125(a)–(d); (2) trademark infringement in violation of 15 U.S.C. § 1114; (3) unfair competition in violation of California Business and Professions Code section 17200; and (4) common-law trademark infringement.

Odyssey personally served Defendant Zhang with the Summons and Complaint in Garden Grove, California, on January 24, 2013, while Zhang was in the state for an industry convention.  (Mot. 2; ECF No. 30, at 5.)   Odyssey served Zhang both personally and in his capacity as an officer for the three entity Defendants.  (Mot. 2; Compl. ¶ 6.)  On February 15, 2013, Odyssey filed a Request for Entry of Default following Defendants' failure to answer or otherwise respond.  (ECF Nos. 11–14.) The Clerk of the Court entered default against Defendant Zhang on February 19, 2012 (ECF No. 15), and against the three entity defendants on February 25, 2013 (ECF No. 24).  Odyssey moved for default judgment on April 15, 2013.  (ECF No. 27.)

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the Clerk's entry of default under Rule 55(a).   Federal Rule of Civil Procedure 55(b) and Local Rule 55-1 require that applications for default judgment set forth (1) when and against what party the default was entered; (2) the identification of the pleadings to which the default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other representative; (4) that the Service Member's Relief Act does not apply; and (5) that notice has been served on the defaulting party, if required by Rule 55(b)(2).

/ / /

The Court has discretion to decide whether to enter a default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint—except those pertaining to damages—are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)).  But in exercising its discretion regarding entry of default, the Court must consider several factors, including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (2) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV.   DISCUSSION

Odyssey's Motion for Default Judgment seeks judgment as to liability on each claim asserted in Odyssey's Complaint.  Provided the Court finds Defendants liable, Odyssey seeks judgment in the form of $2,300,000 in statutory damages, reasonable attorneys' fees in accordance with Local Rule 55-3, $560 in costs, interest on the judgment per 28 U.S.C. §1961(a), and permanent injunctive relief enjoining Defendant from further infringement on Odyssey's trademark rights.  The Court considers each in turn.

**A.   Liability**

Odyssey has satisfied the procedural requirements for default judgment pursuant to Federal Rule of Civil Procedure 55(a) and Local Rule 55-1.  Specifically, Odyssey has set forth that (1) the Clerk entered default judgment against Defendant Zhang on February 19, 2013, and against the three entity defendants on February 25, 2013 (Mot. 2); (2) the default is based on Defendants' failure to respond to Odyssey's January 23, 2013 Complaint (Wu Decl. ¶ 6); (3) Defendant Zhang is neither an infant

1   nor an incompetent person (*id.* ¶ 7); (4) Defendant Zhang is not in active military
2   service (*id.*); and (5) Odyssey served Defendants with notice of its application for
3   default judgment via international mail to their places of business (Mot. 19).

4       The Court also finds that consideration of the *Eitel* factors weighs in favor of
5   granting the Motion. *See Eitel*, 782 F.2d at 1471–72. First, Odyssey would suffer
6   prejudice if the motion were not granted because Odyssey "would be denied the right
7   to judicial resolution of the claims presented, and would be without other recourse for
8   recovery." *Electra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal.
9   2005). Further, because the "well-pled allegations in the complaint regarding liability
10  are deemed true" upon entry of default, *Fair Housing of Marin v. Combs*, 285 F.3d
11  899, 906 (9th Cir. 2002), Odyssey has successfully established the merits of its claim
12  and the sufficiency of its Complaint. While the sum of money at stake here is large, it
13  is governed by statute. *See* 15 U.S.C. § 1117(c) (establishing a statutory minimum of
14  $1,000 and maximum of $2,000,000 per counterfeit mark per type of goods sold if the
15  Court finds the infringement was willful). Finally, the Court finds that Defendants'
16  failure to answer or file a responsive pleading was not the result of excusable neglect
17  because they failed to respond despite notice of this action. (Mot. 11.) Accordingly,
18  Odyssey's Motion for Default Judgment is **GRANTED** as to liability.

19  **B.    Statutory Damages**

20      Odyssey first seeks a statutory award of $2,300,000 as compensation for
21  damages, punishment for Defendants' infringement, and as a deterrent to Defendants
22  and others from future infringement. Specifically, Odyssey seeks $2,000,000 for
23  willful trademark infringement, plus $300,000 for cybersquatting.

24  *i.    Willful Infringement of the Flight Ready Marks*

25      Under the Trademark Act, a plaintiff may elect to recover statutory damages in
26  lieu of actual damages. 15 U.S.C. § 1117(c). The Court may discretionarily award
27  "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or
28  services sold, offered for sale, or distributed, as the court considers just." *Id.* The

1   Court may also grant enhanced damages of up to $2,000,000 per counterfeit mark on a

2   finding of willful infringement. *Id.*

3        Odyssey asks for $2,000,000 in statutory damages for Defendants' infringement

4   of Odyssey's two registered trademarks (i.e., $1,000,000 per infringed mark).

5   Odyssey alleges that Defendants' illegal conduct was willful, as inferred by their

6   failure to defend and participate in the present litigation. *See Philip Morris USA, Inc.*

7   *v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003).   Odyssey also

8   maintains that its business relationship and manufacturing contract with Defendants is

9   further evidence that Defendants knew their merchandise and websites were

10   counterfeit.    Thus, Odyssey argues that statutory damages of $2,000,000 for

11   Defendants' willful infringement are appropriate to punish Defendant for his illegal

12   activity and sufficiently deter against future infringement. (Mot. 12–13.)

13        The Court declines to grant the requested statutory damages of $2,000,000.

14   While the Court takes Odyssey's factual allegations as true and readily agrees that

15   Defendants' conduct was indeed willful, the Court deems Odyssey's requested

16   damages too high given the circumstances of this case.   Although Odyssey's exact

17   damages cannot be determined because of Defendants' failure to participate in the

18   present litigation, an award of $2,000,000 strikes the Court as excessive.   In addition,

19   Odyssey's requested damages would constitute a windfall in excess of the amount

20   necessary to deter future infringement. *See Peer Int'l. v. Pausa Records, Inc.*, 909

21   F.2d 1332, 1332 (9th Cir. 1990).

22        Instead, the Court finds a statutory damages award of $250,000 per trademark

23   infringement (for a total of $500,000) reasonable in this case.   This is within the

24   statutory range for willfulness; it is also above the statutory maximum for non-willful

25   infringement to reflect Defendants' ignoble willfulness in committing the violation

26   against a client.   Furthermore, such an award is in line with default judgments granted

27   by other district courts in similar circumstances. *See, e.g.*, *Herman Miller Inc. v.*

28   *Alphaville Design Inc.*, No. C 08-03437 WHA, 2009 WL 3429739, at *10 (N.D. Cal.

Oct. 22, 2009) (awarding 250 times the statutory minimum, or $250,000, to reflect finding of manufacturer's willfulness).  The Court finds that such an award would adequately serve the purpose of deterring international manufacturers from future violations while compensating the Odyssey for damages incurred because of Defendants' misconduct.

ii.    *Statutory Damages under the Anticybersquatting Consumer Protection Act*

Under 15 U.S.C. § 1117(d), a plaintiff may elect to pursue additional statutory damages as provided by the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).  Such damages are available where defendants have demonstrated bad-faith intent to profit by registering a domain name that is identical or confusingly similar to plaintiff's mark.  15 U.S.C. § 1125(d)(1).  The statutory range for these additional damages is between $1,000 and $100,000 per domain name, as the Court considers just.  15 U.S.C. § 1117(d).

Odyssey claims Defendants registered three domain names confusingly similar to its trademarks, and did so with bad-faith intent to lure customers away from Odyssey's websites.  (Compl. ¶¶ 23, 35, 43.)  Odyssey requests $100,000 in damages per offending domain name, for a total of $300,000.  (Mot. 16.)

Based on the facts and discussion of trademark infringement above, the Court is satisfied that Defendants registered three domain names with bad-faith intent to profit from customers' confusion.  But the Court is disinclined to award the amount of damages Odyssey requests.  Instead, the Court finds it appropriate to award treble the minimum provided by statute, and therefore awards Odyssey $3,000 per domain name (i.e., $9,000).  This award adequately compensates Odyssey and will serve to deter future misconduct.

Thus, the Court **GRANTS** Odyssey's request for statutory damages in the amount of **$509,000**.

/ / /

/ / /

**C.    Attorney's Fees**

Odyssey also requests compensation for reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).  The Court may choose to award reasonable attorneys' fees to the prevailing party in exceptional cases.  15 U.S.C. § 1117(a).  In general, a trademark case is considered "exceptional" when the infringement is "malicious, fraudulent, deliberate, or willful."  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993).  The Court recognizes that Defendant deliberately and willfully infringed upon Odyssey's trademark rights, and thus Odyssey is entitled to attorneys' fees under 15 U.S.C. § 1117(a).

Odyssey asserts that it is entitled to $49,600 in attorneys' fees pursuant to the fee schedule established by Local Rule 55-3.  (Mot. 17.)  But based upon the Court's award of $509,000 in statutory damages, this amount must be adjusted accordingly.  After adjusting the amount of fees in accordance with Local Rule 55-3, the Court **GRANTS** reasonable attorneys' fees in the amount of **$13,780**.[2]

**D.    Costs**

Odyssey further seeks to recover costs under 15 U.S.C. § 1117(a).  Odyssey alleges that its costs, including filing of the Complaint and serving the Summons and Complaint, total $560.  (Wu Decl. ¶ 17; Court Costs Summary, Ex. 20, ECF No. 27.)

Section 1117(a) provides that when a plaintiff establishes a 15 U.S.C. § 1125(c) violation, that plaintiff "shall be entitled" to recover costs.  15 U.S.C. § 117(a).  The Court therefore **GRANTS** Odyssey's request for costs of **$560** incurred in this action.

**E.    Injunctive Relief**

Finally, Odyssey seeks permanent injunctive relief to (1) enjoin Defendant from using Odyssey's marks; (1) enjoin Defendant from manufacturing, advertising,

---

[2] Local Rule 55-3 provides that where a judgment is over $100,000, reasonable attorneys' fees will be $5,600 plus 2% of the judgment amount over $100,000.  Because judgment for Odyssey is $509,000, Odyssey should recover attorneys' fees of $5,600 plus 2% of $409,000, or $8,180.  This total comes to $13,780.

distributing, offering for sale, and selling counterfeit merchandise bearing Odyssey's marks; (3) enjoin Defendants from registering, trafficking in or using any internet domain name that uses any or all of Odyssey's marks; and (4) order Defendants to transfer the domain names "flightready-cases.com," "flightreadycases.com.cn," and "flightready.com.cn" to Odyssey.  (Proposed J. 5.)

The Court finds Odyssey's proposed injunctive relief appropriate.  Odyssey has demonstrated facts supporting the grant of permanent injunction under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.").

Here, Defendants have failed to respond to the claims brought against them despite receiving adequate notice.  Furthermore, Defendants knew that the products they sold were counterfeit because of their business dealings with Odyssey, yet they still continued to infringe upon Odyssey's intellectual property rights.  The Court finds that failure to grant the injunction would result in Odyssey's continued exposure to irreparable harm with no method of recourse.  In addition, an injunctive remedy is warranted because it poses little hardship on the Defendants, who would merely be enjoined from engaging in future illegal infringement.   Accordingly, the Court **GRANTS** Odyssey's proposed injunction.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

9

# V.   CONCLUSION

For the reasons addressed above, Odyssey's Motion for Default Judgment is **GRANTED** with respect to liability.  The Court grants Odyssey statutory damages in the amount of $509,000, attorneys' fees in the amount of $13,780, costs in the amount of $560, and permanent injunctive relief.  Odyssey shall submit a proposed judgment consistent with this Order on or before July 29, 2013.

**IT IS SO ORDERED.**

July 24, 2013

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**